**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES WNEK** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 05-CV-3065** |
| | : | |
| **CITY OF PHILADELPHIA, <u>et al.</u>** | : | |

<u>**MEMORANDUM AND ORDER**</u>

**Kauffman, J.**                                                                 **May 10, 2007**

Plaintiff James Wnek ("Plaintiff") brings this action against Defendants City of Philadelphia (the "City"), Police Officer Alberto Sanchez ("Officer Sanchez" or "Sanchez"), and Temple University Hospital Episcopal Division ("Temple University Hospital" or "Temple") (collectively, "Defendants"), alleging violations of 42 U.S.C. § 1983 ("§ 1983") and state law claims for assault, battery, intentional infliction of emotional distress, and negligence.[1]  Now before the Court are Defendants' Motions for Summary Judgment.  For the reasons that follow, the Motions will be granted in part and denied in part.

**I.       BACKGROUND**

On the night of June 28, 2003, after socializing and drinking with friends, Plaintiff was stopped by police for questioning.  <u>See</u> Declaration of Police Officer Alberto Sanchez ("Sanchez Decl."), at ¶¶ 2-3; Deposition of James Wnek ("Wnek Dep."), at 16-18.  An altercation ensued, and Plaintiff, his cousin Casey Regan, and friend Mike Weaver, were handcuffed and arrested.[2]

---

[1]        The negligence claim is asserted only against Temple.

[2]        Plaintiff was later convicted of harassment and disorderly conduct.  <u>See</u> Wnek Dep., at 12-13.

1

When Officer Sanchez placed Plaintiff in the police car, Plaintiff spit on him.  <u>See</u> Sanchez Decl. ¶¶ 4-6; Wnek Dep. at 17-18.  Plaintiff alleges that after he had been handcuffed and strapped into the police vehicle, Sanchez hit him repeatedly in the face, causing him injury.  <u>See</u> Wnek Dep. at 18-19; Affidavit of Casey Regan ("Regan Aff."), at ¶¶ 4-5.  Officer Sanchez and his partner, Officer Oscilowski, transported Plaintiff and the two other men to the police precinct.  Soon thereafter, Plaintiff was taken to Temple University Hospital for treatment of his facial injuries.  Wnek Dep. at 19-20; Regan Aff. at ¶ 6.

While at the hospital, Officer Sanchez was in charge of guarding Plaintiff, who was placed in a private treatment room.  Plaintiff's left hand was handcuffed to a gurney while he awaited treatment.  A doctor came in to examine his cut lip.  After he left, Sanchez and Plaintiff exchanged profanities, and Sanchez alleges that Plaintiff spit on him and "bumped [him] with his body."  <u>See</u> Sanchez Decl. ¶¶ 7-11; Wnek Dep. at 20.  As the argument grew louder, a woman seated outside the room, who appeared to be a nurse or a hospital employee, told Officer Sanchez to shut the door.  <u>See</u> Wnek Dep. at 20.  After the door was shut, Plaintiff alleges that Sanchez assaulted him, threw him off the table while handcuffed, pounded his face into the ground, punched and choked him about 10-12 times.  <u>Id.</u>  Sanchez alleges that Plaintiff was ranting and raving, and would not stop.  He then "uncuffed the handcuff off the gurney, forced [Plaintiff] to the floor and tried to handcuff his right hand to his already cuffed left hand." Sanchez Decl. ¶¶ 12-13.  Sanchez further alleges that Plaintiff resisted his efforts to cuff his right hand, and denies that he punched Plaintiff in the face.  <u>Id.</u> at ¶¶ 14, 19.

Plaintiff alleges that the assault left him bruised and swollen, and he felt his jaw had been fractured.  <u>See</u> Wnek Dep. at 21.  After examination, a doctor determined that Plaintiff's jaw was

not broken.  See Wnek Dep. at 21.  Thereafter, Plaintiff was "cleaned up" and given his

discharge papers.  He did not complain about the alleged assault to any Temple University

Hospital personnel.  See Wnek Dep. at 39-40, 52.  The following day, Plaintiff sought further

treatment at Northeastern Hospital where he was treated for a left wall sinus fracture and

ruptured eardrum.  See Wnek Dep. at 34-36; see also Northeastern Hospital Radiology Report,

June 29, 2003, attached as Exhibit G to Plaintiff's Response to Defendants' Motion for Summary

Judgment.  Plaintiff received follow up care one week later, but did not seek further treatment.

See Wnek Dep. at 37-38.

## II.    LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is

"whether there is a genuine issue of material fact and, if not, whether the moving party is entitled

to judgment as a matter of law."  Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir.

1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).  "[S]ummary

judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine the evidence in the light most

favorable to the non-moving party and resolve all reasonable inferences in that party's favor.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "there

can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete

failure of proof concerning an essential element of [its] case necessarily renders all other facts

immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for

3

the motion.  See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001).  If the movant meets that

burden, the onus then "shifts to the non-moving party to set forth specific facts showing the

existence of [a genuine issue of material fact] for trial."  Id.

## III.    DISCUSSION

### A.    The Claims against the City of Philadelphia

A plaintiff seeking relief under § 1983 must show that he has been deprived of a right

secured by the Constitution and laws of the United States, and that the defendant was acting

under color of state law.[3]  Harvey v. Plains Tp. Police Dept., 421 F.3d 185, 189 (3d Cir. 2005)

(citations omitted).  In Monell v. Dept. of Social Serv. of City of N.Y., 436 U.S. 658, 691 (1978),

the Supreme Court held that liability arising from § 1983 violations cannot be imposed under the

doctrine of *respondeat superior*.  Liability can be imposed only when the alleged injury is

inflicted as part of a government policy or custom.  See Oaks v. City of Philadelphia, 59 Fed.

Appx. 502, 503 (3d Cir. 2003).  A government policy is made when a decision-maker holding

final authority to establish municipal policy with respect to the action issues an official

proclamation, policy, or edict.  Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (cited in

Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotations

omitted)).  Alternatively, a course of conduct may be considered a custom when "practices of

---

[3]    42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom,
or usage, of any State or Territory or the District of Columbia, subjects, or
causes to be subjected, any citizen of the United States or other person within
the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party
injured in an action at law, suit in equity, or other proper proceeding for
redress....

state officials are so permanent and well settled as to virtually constitute law." Andrews, 895

F.2d at 1480 (citing Monell, 436 U.S. at 690 (citations omitted)).  A plaintiff seeking to establish

municipal liability bears the burden of "proving that the municipal practice was the proximate

cause of the injuries suffered." Hogan v. City of Easton, 2006 WL 3702637, at *9 (E.D. Pa. Dec.

12, 2006) (citations omitted).  "To establish causation, a plaintiff must demonstrate a 'plausible

nexus' or 'affirmative link' between the municipality's custom and the specific deprivation of

constitutional rights at issue." Id.

  Courts have recognized that municipal liability may arise where a police department has

failed to train or discipline its officers.  See Moleski v. Cheltenham Tp., 2002 WL 32349132, at

*13 (E.D. Pa. April 30, 2002) (citing City of Canton v. Harris, 489 U.S. 378 (1989)) ("it may

happen that in light of the duties assigned to the specific officers or employees the need for more

or different training is so obvious, and the inadequacy so likely to result in the violation of

constitutional rights, that the policymakers of the city can reasonably be said to have been

deliberately indifferent to the need...").  Moreover, a city may be liable for its failure to discipline

an officer after "multiple complaints against him, particularly where the prior conduct which the

officer engaged in is similar to the conduct which forms the basis for the suit." Ehly v. City of

Philadelphia, 2004 WL 2644392, at *3 (E.D. Pa. Nov. 17, 2004) (citations omitted); Hogan,

2006 WL 3702637, at *10.  Plaintiff alleges that the City failed to properly sanction and

discipline its police officers, and that this failure amounted to a policy or custom actionable

under § 1983.  He further alleges that Sanchez had been the subject of four previous internal

affairs complaints spanning from 1992 to 2003, and that the City had been on notice of this

unfavorable history, yet failed to take appropriate measures to supervise him.

The facts alleged by Plaintiff, even when considered in the light most favorable to him, are insufficient to give rise to municipal liability.  Defendants have presented evidence that none of the prior complaints lodged against Sanchez was for excessive force in the course of an arrest, and all were investigated.  One of these investigations resulted in Sanchez's suspension without pay for three days.  The remaining three investigations cleared Sanchez of the alleged misconduct.  See City of Philadelphia Personnel Department, Notice of Suspension without Pay, attached as Exhibit A to Defendants' Reply; see also Exhibits A-D of Pl's Response.  Thus, Plaintiff has not demonstrated that the City failed to discipline or supervise Sanchez, or that a pattern of failure to discipline police officers has been pervasive.  Indeed, the evidence offered by Defendants refutes Plaintiff's assertion that the City took no steps to discipline Sanchez.  Nor has Plaintiff provided sufficient evidence to suggest that the City's practices caused the alleged violation of his constitutional rights.  See Ehly, 2004 WL 2644392, at *3.  Since no genuine issue of material fact remains, summary judgment will be entered in favor of the City.

**B.      The Claims against Officer Sanchez**

Defendants seek summary judgment on the claims against Officer Sanchez, arguing that the force he utilized against Plaintiff was permissible, and alternatively, that he is entitled to the defense of qualified immunity.  "Qualified immunity shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." James v. York County Police Dep't, 160 Fed. Appx. 126, 134 (3d Cir. 2005).  In order to determine whether a defendant is entitled to immunity, the Court must engage in a two-part inquiry: first, whether the challenged conduct amounts to a constitutional violation, and second, whether the right was "clearly

6

established" at the time of the alleged deprivation.  See Saucier v. Katz, 533 U.S. 194, 202

(2001).  With respect to the second prong, "the relevant, dispositive inquiry in determining

whether a right is clearly established is whether it would be clear to a reasonable officer that his

conduct was unlawful in the situation he confronted."  Id.

Applying the Saucier test to this case, it is clear that the facts alleged by Plaintiff, if

proven, could amount to a violation of his Fourth Amendment right to be free from excessive

force.  Plaintiff alleges that he was subjected to repeated violent assaults by Sanchez after he

already was handcuffed and therefore "seized."  See Brower v. County of Inyo, 489 U.S. 593,

596-97 (1989) ("A Fourth Amendment seizure [occurs] only when there is a governmental

termination of freedom of movement through means intentionally applied.").  The reasonableness

of the force used must be determined by a consideration of the "totality of the circumstances,

including the seriousness of the crime, the safety threat posed by the suspect, the suspect's

attempts to resist arrest or to evade it by flight."  James, 160 Fed. Appx. at 134 (citing Graham v.

Connor, 490 U.S. 386, 396 (1989)).

Plaintiff and Sanchez have offered conflicting accounts of what transpired at Temple on

the night of June 28, 2003.  Plaintiff alleges that while he was in the hospital room, Sanchez

threw him on the floor handcuffed, and pounded his face into the ground, punching and choking

him repeatedly.  See Wnek Dep. at 20.   In contrast, Sanchez states in his declaration that only

after Plaintiff spit on him and "bumped" him with his body, he forced him to the floor and tried

to handcuff his right hand to the already cuffed left hand.  When Plaintiff resisted, he had to

struggle to handcuff him.  Sanchez denies ever punching Plaintiff.  See Sanchez Decl. at ¶¶ 11-

15, 19.  Viewing the facts in a light most favorable to Plaintiff, the Court cannot conclude as a

7

matter of law that no reasonable jury could find that Sanchez's conduct was unreasonable under the circumstances, particularly in light of the undisputed fact that Plaintiff was already handcuffed at the time of the alleged assault and was not attempting to flee.  Since a genuine issue of material fact exists as to the reasonableness of Sanchez's alleged conduct, the Court will deny summary judgment on the excessive force claim.

Plaintiff also maintains state law claims against Sanchez for assault, battery, and intentional infliction of emotional distress.  Sanchez argues the tort claims are barred by the Political Subdivision Tort Claims Act (the "Act"), which shields local agencies from liability for intentional torts.  See 42 Pa. Cons. Stat. § 8541; see also Pollarine v. Boyer, 2005 WL 1806481, at *3 (E.D. Pa. July 29, 2005).  While employees generally enjoy the broad immunity conferred upon their agencies, "if the court determines that the employee's act constituted a crime, actual fraud, actual malice or willful misconduct, the employee's ability to claim both the Act's overall restriction on liability and the defense of official immunity is eliminated."  DeBellis v. Kulp, 166 F. Supp. 2d 255, 279 (E.D. Pa. 2001) (citing 42 Pa. Cons. Stat. § 8550); Hill v. Borough of Swarthmore, 4 F. Supp. 2d 395, 397 (E.D. Pa. 1998).  Since genuine questions of material fact preclude a finding that Sanchez's actions did not amount to "actual malice" or "willful misconduct," the Court cannot conclude at this time that he is entitled to immunity.  See, e.g., Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) ("A police officer may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive.").   Accordingly, the assault and battery claims will not be dismissed.[4]

---

[4]      Defendants do not dispute that Plaintiff has alleged a cause of action for assault and battery.

8

Finally, Defendants argue that the claim for intentional infliction of emotional distress should be dismissed because Plaintiff has failed to produce competent medical evidence that he actually suffered emotional harm.  The Court agrees.  Under Pennsylvania law, a claim of intentional infliction of emotional distress must be supported by competent medical evidence of the alleged mental injury.  See Estevez v. City of Philadelphia, 2007 WL 707358, at *9 (E.D. Pa. March 2, 2007); Simril v. Township of Warwick, 2003 WL 1204104, at *2 (E.D. Pa. March 18, 2003) ("To recover for intentional infliction of emotional distress in Pennsylvania, the plaintiffs must support their claims with competent medical evidence in the form of expert medical evidence"); Jackson v. Paparo, 2002 WL 32341800, at *11 (E.D. Pa. Oct. 28, 2002) (granting summary judgment in favor of the defendant because the plaintiff failed to support his claim of intentional infliction of emotional distress with competent medical evidence).  Plaintiff has failed to establish a prima facie case of emotional distress.[5]  Accordingly, summary judgment will be granted with respect to this claim.

## C.    The Claims against Temple University Hospital

Plaintiff alleges that Temple University Hospital negligently failed to protect him from the assault by Officer Sanchez and failed to provide adequate medical treatment in the aftermath of the alleged assault.[6]  Temple seeks summary judgment on these claims, contending that (1) it does not owe a duty to its patients to protect them from the wrongful acts of third parties; (2) it

---

[5]    Plaintiff testified that he had not seen a psychiatrist, psychologist, or any mental health professional regarding this incident.  See Wnek Dep. at 38.

[6]    Plaintiff's Complaint also asserted a §1983 claim against Temple, suggesting that Temple employees conspired with the other defendants to deprive Plaintiff of his constitutional rights.  On June 28, 2006, this Court granted Temple's motion to dismiss the §1983 claim, but permitted the negligence claim to go forward.

provided appropriate treatment for Plaintiff's injuries; and (3) Plaintiff's medical malpractice claim should be dismissed because he failed to file a "certificate of merit" within 60 days of the filing of the Complaint, as required by Pennsylvania Rule of Civil Procedure 1042.3.

In order to prevail on a negligence claim under Pennsylvania law, a plaintiff must prove the following elements: "(1) a duty of care recognized by the law; (2) a breach of that standard of care; (3) a causal connection between the breach and the (4) injury to the plaintiff." Michalesko v. Office Max, 2006 WL 1725553, at *8 (M.D. Pa. June 20, 2006) (citations omitted). "The defendant owes the plaintiff a duty if the defendant's actions are unreasonable, or expose the plaintiff to an elevated risk of foreseeable harm." Miller v. Group Voyagers, Inc., 912 F. Supp. 164, 167 (E.D. Pa. 1996) (emphasis in original) (citations omitted).

Traditionally, the relationship between hospital and patient was considered to give rise to a duty to protect the patient from foreseeable criminal acts of third persons. Hall v. Ford Enterprises, Ltd., 445 A.2d 610, 611 (D.C. Cir. 1982) (emphasis added); see generally Elias v. Lancaster General Hosp., 710 A.2d 65, 69 (Pa. Super. 1998) ("hospital['s] primary duty is to protect the health and welfare of patients in their care"). Indeed, courts have recognized the existence of a "special relationship" between hospital and patient as well as physician and patient. See Shaw v. Manor Health Care Corp., 1989 WL 143263, at *4 (E.D. Pa. Nov. 21, 1989); DiMarco v. Lynch Homes-Chester County, Inc., 384 Pa. Super. 463, 472 (Pa. Super. 1989). However, even the existence of a special relationship does not render the hospital a guarantor of a patient's absolute personal safety. Gay v. United States, 739 F. Supp. 275, 277 (D. Md. 1990); see also Restatement (2d) of Torts § 314A, comment (f) ("a defendant is not required to take any action beyond that which is reasonable under the circumstances ... he is not required

10

to give any aid to one who is in the hands of apparently competent persons who have taken charge of him...").

Plaintiff was handcuffed and in police custody when he arrived at Temple, and remained in police custody at the time of his discharge.  At no time did Temple take custody of the Plaintiff, nor was Sanchez within the hospital's realm of control or supervision.  Plaintiff's argument that the attack was foreseeable because a person who appeared to be a hospital employee heard him arguing with Sanchez and ordered Sanchez to "close the door" is unpersuasive.  Sustaining such an argument would place hospitals in the unreasonable and untenable position of having to monitor and supervise police activity.  Under the circumstances, it was not unreasonable for Temple to assume that it was not duty-bound to protect Plaintiff from the police officer who was his custodian and had brought him in to the hospital for treatment.  Accordingly, the negligence claim against Temple will be dismissed.

A plaintiff pursuing a medical malpractice claim "must file a certificate of merit in which a professional licensed in the same field supplies a written statement that a reasonable probability exists that the actions of the defendant fell outside acceptable professional standards and that the actions were the cause of harm suffered by the plaintiff.  See Pa. R.C.P. 1042.3(a)(1)."  Boyd v. United States, 2006 WL 2828843, at *5 (M.D. Pa. Sept. 29, 2006).  It is undisputed that Plaintiff failed either to file a certificate of merit or to seek an extension for the filing deadline.  Plaintiff alleges that the failure should be excused, citing the "common knowledge" exception, according to which the filing of certificates of merit is not required when the alleged wrongful conduct was within the realm of common knowledge and experience.  See Varner v. Classic Communities Corp., 890 A.2d 1068, 1075 (Pa. Super. 2006).  In this case, Plaintiff challenges the conduct of

11

licensed health care professionals in treating his injuries.  The propriety of medical treatment clearly implicates professional judgment and goes well beyond the realm of common knowledge. Since Plaintiff's failure to file a certificate of merit is fatal to his medical malpractice claim, summary judgment is appropriate and will be granted.

**IV.      CONCLUSION**

For the foregoing reasons, summary judgment will be granted in favor of the City and Temple.  Officer Sanchez's Motion will be granted as to the claim for intentional infliction of emotional distress, and denied as to the § 1983 claim and the claims for assault and battery.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES WNEK | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-CV-3065 |
| | : | |
| CITY OF PHILADELPHIA, <u>et al.</u> | : | |

## <u>ORDER</u>

**AND NOW**, this 10th day of May, 2007, upon consideration of Defendant Temple University Hospital's ("Temple") Motion for Summary Judgment (docket no. 27) and Defendants the City of Philadelphia (the "City") and Officer Alberto Sanchez's ("Officer Sanchez") Motion for Summary Judgment (docket no. 30), and all responses thereto, and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motions for Summary Judgment of Temple and the City are **GRANTED**.  It is **FURTHER ORDERED** that the Motion for Summary Judgment of Officer Sanchez is **GRANTED** as to the claim for intentional infliction of emotional distress and **DENIED** as to the § 1983 claim and the claims for assault and battery.

**BY THE COURT:**



**/s/ Bruce W. Kauffman**
**BRUCE W. KAUFFMAN,  J.**

13